Good morning, Mr. Anderson. Good morning. Shall I commence? I may please the court. As the court is aware, after twice denying the defendant's motion for acquired finding of not guilty, which was pressed on all issues but was essentially argued on the contention that the government failed to prove bodily injury in a civil rights claim, my client, a Plymouth police sergeant, was convicted of violation of civil rights and violation of 18 United States Code 242 with bodily injury resulting and also writing a false report in violation of 18 United States Code 1519. As the court is aware, the incident that took place in the cell block was a chaotic scene. It was captured by a camera in the ceiling that had no audio. It was difficult to determine any amount of force that was used. The situation itself from beginning to end lasted for a minute, 37 seconds, and my client was in that cell for a total of a minute, 20 seconds, 11 of which he was essentially out of view of the camera. Other than the ceiling camera, there were three government witnesses who testified regarding the force used by my client. The first was Jonathan Yule, a probationary officer who could have been terminated for any reason, who was immunized by the government. He originally testified before the grand jury that he saw more than two, but less than 10 strikes. At trial, he testified he saw between four and 10, but then admitted that he only saw one palm strike actually strike the prisoner up in the head or upper back area. He also testified to a couple knee strikes on the outer portion of the thigh. Officer Yule testified that another officer, Officer Dexter, was the one who applied leg irons to the prisoner, when in fact the video showed it was Officer Yule who did that. The second officer was Officer Masterson, a 15-year veteran, who admitted to his internal affairs sergeant on video and then admitted at trial that what he remembered from the incident and what he saw in the video were two completely different things. Officer Masterson, again, a 15-year veteran, testified that he did not remember Officer Yule even being present and then later testified that Yule was present, but that Yule was by the feet of the prisoner and my client Coughlin was by the head of the prisoner, which was the exact opposite of what had happened. The third officer was Officer Dexter. It's important to note, by the way, that Masterson did not see any strikes, did not hear any strikes. The third officer, Officer Dexter, an Iraq combat veteran, an eight-year veteran of the police department, somebody with a master's degree who was about to graduate from law school, testified that in his memory the prisoner's feet were by the door and that his head was by the bench, which again was the opposite of what happened. Dexter did not hear any blows, did not see any blows. And Dexter himself testified elaborately before the grand jury to going in and putting leg irons on this prisoner and struggling to get the leg irons over the jeans of the prisoner when, in fact, it wasn't even he who put on the leg irons. Counsel, these are all good jury arguments. Why is it that all these arguments as a matter of law lead to insufficiency of the evidence? Isn't that your problem? Well, that is a primary issue in terms of the insufficiency of the evidence, but I think these arguments also dovetail into the fact that the court did not give the full instruction requested under Graham versus Connor that I'll get to in a few minutes. If I can just get to the lack of injury and then I'll address your issue. The prisoner here, Jonathan Layton, who was admittedly intoxicated at this time, did not testify at the trial. The booking video from the Plymouth police, the booking photograph, was not offered. A booking video, because it was an OUI case, was taken. It did not show any injuries. He was asked if he was injured on video. He said no. He was asked if he wanted a doctor because he was entitled to that statutorily in Massachusetts. He said no. He was taken to the Plymouth jail and a thorough exam was given, including a retinal scan. Nobody noted any injury. Two days later, a very extensive examination was done at the jail by a nurse. But, counsel, the instruction told the jury that pain can be a form of bodily injury, and there was evidence put forth by the government that there was evidence that your client was striking Mr. Layton. Why could a jury infer from that that even though he may not have experienced detectable physical injury, he nevertheless experienced pain? Why could a jury not draw that inference? Well, breaking that up into two parts, I think that the first argument is that before the jury, there was no evidence of pain. No one heard a single blow struck. No one heard a grunt or a groan. You have an intoxicated prisoner that, on the best evidence from Officer Yule, there's one palm strike to the back of the head or the upper back, and there's two knee strikes. There's no indication that he felt pain from those. Granted, those are pain compliance techniques, and the purpose of them is to inflict some type of pain to distract the prisoner from what he's doing to get him to comply with your commands. But I think in that case, there was no evidence from which a jury could find that. And second, my argument is that this was so de minimis that the judge should have taken it upon himself and granted the required finding of not guilty on so much of the civil rights claim as contended bodily injury. He would have been going against circuit precedent, wouldn't he, if he had done that? Circuit precedent said injury, however minimal, however fleeting. And I don't see how the judge could have granted those motions without being, in effect, in default of the precedent. Well, again, I would argue under the Eighth Amendment precedent that I've cited, in a cruel and unusual punishment context, the court has held, or courts have held, that if an injury is so de minimis, it can't be a constitutional injury. Right, and we're not operating under the Eighth Amendment. And the Fifth Circuit has adopted that standard for a Fourth Amendment reasonableness standards in the Bruggeman case. So do you, in effect, say yes, you would have to overrule, or the trial judge would have to have refused to follow existing circuit precedent? Well, I think the trial judge could have simply said this injury, to the extent there even is one, would be so de minimis that it's not a constitutional violation. The government could certainly proceed with it. You're not answering my question. Wouldn't the trial judge have had to say, I am not going to follow circuit precedent. I'm going to look to the Fifth Circuit. I'm going to look to Eighth Amendment cases and come up with a different rule. I think under Bailey he could have still granted the motion. I am asking this court to review the Bailey decision, but I think under Bailey case law that the judge simply could have said, what's here is it's too de minimis for me to send this to the jury. I'm going to let you go forward with the misdemeanor civil rights violation, but I don't think that there's enough injury here to present that to the jury. So that's my first contention. I guess the next contention would be that although Bailey is the law of this circuit, has been since 2005, and although the jury instructions submitted by the defendant in this case basically were from Bailey, I think that Bailey, looking back, at least in this fact pattern, sets the bar way too low in terms of physical injury. And when the Bailey case was decided, they cited to a number of other laws that had been passed that defined bodily injury, and I think it's very interesting if you look at it, because United States Code 242 was amended in November 18, 1988, to add the bodily injury component. And on this same date, Congress also passed United States Code 1864, exact same date, November 18, 1988, wherein Congress defined bodily injury. So when one law passed on that day, they put in the definition of bodily injury that consisted of definition of pain no matter how temporary, and then in the civil rights statute, they don't. And I think that by not defining it in one statute and defining it in the other, what Congress intended was that you go by a common law definition. Counsel, haven't you arguably, were you trial counsel here? I was one of the trial counsel, yes. Okay. Well, I believe the government argues that the bodily injury instruction that you now object to was actually affirmatively agreed to below, and so it's not even a plain error forfeiture situation. They're arguing that you really waived the argument. You affirmatively agreed to the correctness of this instruction. Is that not a correct reading? It is a correct reading, and I admit it's an extremely uphill battle. Why is that not a waiver argument as opposed to a forfeiture argument? Why haven't you really waived the arguments that you're making now about the incorrectness of that instruction? The court could appropriately deem it waived, but I suggest that in this fact pattern in the interest of justice here where somebody was convicted for causing an injury when no one heard a bow, no one heard an ouch, no one heard a scream, no one saw a scratch, bump, bruise on this prisoner, to take a misdemeanor punishable by a year in prison and all of a sudden have a felony conviction punished by 10 years in prison, have sentencing guidelines that all of a sudden raise it from a year to 21 to 27 months. He got a year and a day. Is that right? He did. But he has the felony conviction. He does have the felony conviction. May I ask you a question? There are exhibits, I take it, including Exhibits 4 and I think 12. It might be 13, but I think it's 12. Those are the overhead camera videos? Yes. Okay. The jury got to see those? More times than they probably wanted to, yes. And so could the jury not have seen Sergeant Coughlin do at least one, two knee strikes and see a response from the alleged victim? So in other words, the knee strike worked. And could a jury not infer from that that there is some minimal amount of pain or bodily injury? If all of that is true, if the jury could find that, what standard is it that you're asking it be changed to? I think we should go back to the common law definition of injury or common sense definition of injury. The way the jury was instructed, I believe that most of these things apply. They talk about burns, cuts, abrasions, bruises. Those are all injuries. That's some type of damage to the body. And I agree that physical pain could be an injury, but I think it's got to be some description of physical pain. It's got to be something more than a 0.2 on a scale of 1 to 10. Again, we have an intoxicated individual. You're right, there is a video. It does show my client's knee striking his body, and it does show the body moving closer to the wall. So there was some movement based upon that knee strike. But, again, there was no evidence that that intoxicated 200-pound person felt pain when that knee contacted his leg and had him move. But I guess the premise of my question is that that would be a jury inference. Are you saying the jury could not infer that, or are you saying that there needs to be some other evidence, some other evidence of physical manifestation, photographs or? I think there should be some other type of evidence. Why? Why should that be the case? Because here it's just speculation. If he had a bruise on his thigh, if there was something to indicate that there was some type of contact. I thought you conceded when I asked the question that the jury could have inferred that there was pain. You didn't concede that? No, I did concede that, and they could have, but I don't think it was a necessary conclusion for them to draw. And I think the evidence was extremely thin. And, again, to take what is a misdemeanor and all of a sudden turn it into a felony based upon such de minimis injury or de minimis impact, it's just not. Counsel, didn't you, I think you acknowledged, well, perhaps not explicitly, but the government did present expert testimony that the purpose of these techniques is to inflict, the purpose of the techniques that are arguably visible in the video is to control technique. So didn't the government offer expert testimony to that effect? I believe both experts or both sides agreed that these are pain compliance techniques. But, again, I'd just argue there was no evidence that there was any pain felt. If I can just move on briefly to my Graham v. Conner argument here and the jury instruction that was submitted. On page 52 of my brief, there's a number of bullet points that were presented in proposed jury instruction regarding Graham v. Conner. And the court indicated that they would give the substance of these. But I think what the court actually gave was inadequate in light of what was presented here. And if you look at the bullet points, which come right out of the language of Graham v. Conner, which is the law of the land, in which I think the jury should have been instructed, just read from Graham v. Conner, the Supreme Court talks and says that not every push or shove, even if it may later seem unnecessary, is unreasonable or in violation of the Fourth Amendment. And the jury was never told that. Graham v. Conner teaches that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a situation. Take a second. Okay. And I just think, had the jury been instructed on this and had the felony component bodily injury been taken away, that the jury may have come to a different verdict on all of this. And I'd ask you to vacate the conviction. Thank you. Good morning, Your Honors. May it please the Court. Crystal Yang on behalf of the United States. Your Honors, in this case, the defendant willfully violated John Layton's constitutional right to be free from excessive force, resulting in bodily injury to Layton, as well as falsified an official police report in order to impede a federal investigation. Under this Court's law in Bailey, bodily injury under Section 242 includes any injury to the body, no matter how temporary, including physical pain. Viewed in the light most favorable to the government, the evidence at trial supports the jury's finding that the defendant's intentional use of excessive force caused Layton to suffer physical pain. The government presented eyewitness testimony from other officers in the holding cell, a video that portrayed the events, as well as expert testimony from a use of force expert, all of which demonstrated that the defendant performed several hand strikes, as well as two knee strikes. Pain compliance techniques intended to cause pain on John Layton while he was on the concrete floor of the holding cell. The defendant repeatedly struck Layton, despite the fact that Layton was not kicking, resisting, or being threatening, and the holding cell videos show Layton's body physically moving in response to the force of the defendant's strikes. Based on this evidence, a rational jury could infer that Layton suffered physical pain, and therefore bodily injury. Can I ask you a question to help sort of set the context for me? The way the case was presented, would it have been possible for the jury to have found no bodily injury, and yet there would still be a conviction? Or was it presented in such a way that if there were no pain, no bodily injury, there had to be an acquittal on count one? Your Honor, the jury could have found that the defendant was merely guilty of the misdemeanor version. The jury instructions, as well as the jury verdict form, allowed for them to first consider the three elements for the misdemeanor offense, and then if they found the defendant guilty, to then proceed to the felony enhancement. Can you tell me what sort of excessive force claim would not involve bodily injury? Have there been prosecutions, misdemeanor prosecutions under this statute with an excessive force theory that didn't involve bodily injury? First of all, Your Honor, obviously Section 242 allows for prosecutions based on any constitutional rights. But the theory of the prosecution here was excessive force, wasn't it? Was there something else that was alleged? No, this was premise on excessive force. I think there are situations in which there could be a misdemeanor version. You could imagine a situation, for instance, in which an officer, let's say, blocks an arrestee or a suspect or threatens physical force, which would constitute excessive force under the facts and circumstances, and yet there is no bodily injury that results from that force. So I think there are circumstances. Impeding someone. Impeding someone's access, blocking their ability to exit, let's say. Or simply refusing to bring the person before a court within the time allowed, I assume, would be a violation, wouldn't it? Potentially under due process clause, yes. But under a Fourth Amendment excessive force, I think there are instances, as you mentioned, in which there could be just a misdemeanor offense. If I may briefly turn to the bodily injury instruction, it's the government's position that that argument has been waived. The court's instruction was consistent with the one proposed by the defendant. The defendant didn't object when the court initially gave that instruction. And then when the jury came back during its deliberations and asked for guidance on the issue of bodily injury, the court said it would repeat the definition. At that point, defense counsel stated, and I quote, I don't disagree, judge. I think that's an appropriate response. But even if this court were not to deem that argument waived, it's foreclosed by this court's precedent in Bailey. And finally, as to the Graham v. Conner jury instruction, the defendant is not entitled to the particular language of the Graham v. Conner decision. As the defendant concedes in his brief, if other circuits have said that there's no talismanic effect of any precise language in Graham, here the district court correctly conveyed the proper legal standard in Graham and therefore it did not abuse its discretion. If there are no further questions. No, thank you. Thank you both.